IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| **JOSH McMICHAEL**<br><br>and<br><br>**PENNI McMICHAEL**<br><br>      *Plaintiffs*,<br><br>v.<br><br>**SELECT PORTFOLIO SERVICING, INC.**<br><br>and<br><br>**PROFESSIONAL FORECLOSURE CORPORATION OF VIRGINIA**<br><br>      *Defendants*. | Civil Action: 6:20-cv-00004-NKM |

**Amended Complaint and Request for Declaratory Judgment**

To the Honorable Judge of Said Court:

  Pursuant to Rule 15(a)(1)(B), Plaintiffs, Josh McMichael and Penni McMichael file this Amended Complaint and Request for Declaratory Judgment, and state upon information and belief as follows:

**I. Parties**

1. Plaintiffs, Josh McMichael and Penni McMichael ("Plaintiffs") are natural persons who reside in the Commonwealth of Virginia at 504 Mount Atlas Road ("the property") in the city of Lexington.

2. Select Portfolio Servicing, Inc. ("SPS") is a for profit business entity doing business in the Commonwealth of Virginia.

3. Professional Foreclosure Corporation of Virginia ("Substitute Trustee"), as Substitute Trustee, is a for profit business entity doing business in the Commonwealth of Virginia.

**II. Facts**

4. Plaintiff owns a tract of land in the City of Lexington which is described as follows:

    All that certain parcel of land with all improvements thereon rights and appurtenances thereunto appertaining, contained 2.23 acres, more or less, lying on the easterly side of Rout 716 (Mt. Atlas Road) in Walkers Creek Magisterial District, Rockbridge County, Virginia, shown as "2.23 AC" on a plat dated November 15, 2005, made by Farris P. Hotchkiss, Jr., LD, attached hereto and incorporated herein fully by reference, and being the same property acquired by Josh Randall McMichael and Penni F. McMichael, husband and wife, by Deed of Gift dated February 14, 2007, from Josh Randall McMichael and recorded in the Office of the Clerk of the Circuit Court of Rockbridge County, Virginia, immediately preceding the instrument.

5. Plaintiffs entered into a mortgage loan contract ("the loan") on February 14, 2007 in which the Plaintiffs were the borrowers. The loan was evidenced by a note ("the Note") and secured by a deed of trust ("the Deed of Trust"), both of which are valid contracts signed by the Plaintiffs.

6. The Deed of Trust sets forth the following:

    *"This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law."*

7. The Deed of Trust defines "Applicable Law" as *"all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."*

8. The Deed of Trust defines RESPA as *"the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in*

*regard to a "federally related mortgage loan" even if the requirement does not qualify as a "federally related mortgage loan" under RESPA."*

9. Plaintiffs began to experience financial strain in early 2019 after Plaintiff Penni McMichael lost her job. In addition, Plaintiff Josh McMichael had a reduction of income.

10. Plaintiffs continued to make payments with funds in their savings account but unfortunately fell behind shortly after depleting those funds.

11. In an effort to save their home, Plaintiffs submitted a loan modification package in the fall of 2019.

12. The loan modification package was denied on October 23, 2019 and Plaintiffs appealed the determination within the appeal period given by Defendant SPS.

13. Despite the ongoing loss mitigation review, in late November Defendant SPS scheduled a foreclosure sale to be conducted on Plaintiffs' property on December 31, 2019 despite Plaintiffs' pending appeal.

14. Defendant SPS claims the appeal was denied on December 17, 2019.

15. Even if the appeal was denied on December 17, 2019, Defendant SPS engaged in "dual tracking" Plaintiffs' loan in violation of 12 CFR §1024.41 by continuing to review them for loss mitigation options during their pending appeal while actively proceeding with a foreclosure auction.

16. In addition, Defendant SPS is required under 12 CFR §1024.40 to designate a single point of contact representative to a delinquent borrower's account to assist them with loss mitigation options.

17. Plaintiffs were assigned a single point of contact but each time they attempted to contact the single point of contact they were transferred to representatives who were unfamiliar with their mortgage loan account.

18. Upon information and belief, Defendant SPS and Defendant Substitute Trustee sold Plaintiffs' property at auction on December 31, 2019 at 10:00 a.m.

19. Plaintiffs had a substantial amount of equity in their home when Defendant SPS and Defendant Substitute Trustee foreclosed upon it, divesting them of not only their home but the asset of approximately $164,000.00 in equity.

Plaintiff alleges:

### III.     Claims

### A. Breach of Deed of Trust for Violation of 12 C.F.R. §1024.41 of the Real Estate Settlement Procedures Act.

Incorporating Previous Paragraphs:

20. The Promissory Note and the Deed of Trust are enforceable contracts that confer contingent power to foreclose to the Trustee.

21. The Note and Deed of Trust are valid binding contracts. Under Virginia law, federal regulations governing the foreclosure process are part of the mortgage contract. Virginia law recognizes that a Note and Deed of Trust constitute a legally enforceable contract, which imposes obligations on the lender and the borrower. *Mathews v. PHH Mortg. Corp.,* 283 Va. 723 (2012). These obligations include specific conditions precedent to foreclosure that the servicing institution must comply with to validly foreclose, including notice requirements in the Deed of Trust and federal requirements prior to foreclosure.

    The Deed of Trust states *"This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law."*

22. Defendant SPS agreed in the Deed of Trust to service the loan pursuant to federal guidelines and regulations, which includes those contained in RESPA.

23. Defendant SPS failed to comply with specific RESPA regulations as outlined herein and therefore did not have the ability to accelerate the loan and proceed with the foreclosure process.

24. Plaintiffs began to experience financial strain in early 2019 after Plaintiff Penni McMichael lost her job. In addition, Plaintiff Josh McMichael had a reduction of income.

25. Plaintiffs continued to make payments with funds in their savings account but unfortunately fell behind shortly after depleting those funds.

26. In an effort to save their home, Plaintiffs submitted a loan modification package in the fall of 2019.

27. The loan modification package was denied on October 23, 2019 and Plaintiffs appealed the determination within the appeal period given by Defendant SPS.

28. Despite the ongoing loss mitigation review, in late November Defendant SPS scheduled a foreclosure sale to be conducted on Plaintiffs' property on December 31, 2019 despite Plaintiffs' pending appeal.

29. Defendant SPS claims the appeal was denied on December 17, 2019.

30. Even if the appeal was denied on December 17, 2019, Defendant SPS engaged in "dual tracking" Plaintiffs' loan in violation of 12 CFR §1024.41 by continuing to review them for loss mitigation options during their pending appeal while actively proceeding with a foreclosure auction.

31. Defendant SPS's actions are clearly prohibited by 12 C.F.R. §1024.41(f). Under 12 C.F.R. §1024.41(f)(2), "If a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:

(i) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

(ii) The borrower rejects all loss mitigation options offered by the servicer; or

(iii) The borrower fails to perform under an agreement on a loss mitigation option."

32. Plaintiff was in review before Defendant SPS made the first notice of filing of foreclosure which prohibits Defendant SPS from initiating foreclosure proceedings unless the following conditions listed in 12 C.F.R. §1024.41(f)(2) are met:

"(i) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

(ii) The borrower rejects all loss mitigation options offered by the servicer; or

(iii) The borrower fails to perform under an agreement on a loss mitigation option."

33. None of the conditions in 12 C.F.R. §1024.41(f)(2) have been met. By actively reviewing Plaintiffs' account for loss mitigation during their pending appeal and

proceeding with a foreclosure sale simultaneously, Defendant SPS is engaging in "dual tracking" in violation of 12 C.F.R. §1024.41(f).

34. Under 12 C.F.R. §1024.41(f) which is incorporated into the Deed of Trust contract, Defendant SPS is required to postpone foreclosure activity while a borrower is in an active loss mitigation review or the appeal process to ensure all conditions precedent to foreclosure have been met.

35. Defendant SPS's breach of the Deed of Trust contract has caused Plaintiffs damage by placing their home in foreclosure, foreclosure fees and costs added on to their account, significant legal fees, and the loss of approximately $164,000.00 in equity in the property.

**B. Breach of Deed of Trust for Violation of 12 C.F.R. §1024.40 of the Real Estate Settlement Procedures Act.**

Incorporating Previous Paragraphs:

36. The Promissory Note and the Deed of Trust are enforceable contracts that confer contingent power to foreclose to the Trustee.

37. The Note and Deed of Trust are valid binding contracts. Under Virginia law, federal regulations governing the foreclosure process are part of the mortgage contract. Virginia law recognizes that a Note and Deed of Trust constitute a legally enforceable contract, which imposes obligations on the lender and the borrower. *Mathews v. PHH Mortg. Corp.,* 283 Va. 723 (2012). These obligations include specific conditions precedent to foreclosure that the servicing institution must comply with to validly foreclose, including notice requirements in the Deed of Trust and federal requirements prior to foreclosure.

    The Deed of Trust states *"This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law."*

38. Defendant SPS agreed in the Deed of Trust to service the loan pursuant to federal guidelines and regulations, which includes those contained in RESPA.

39. Defendant SPS failed to comply with specific RESPA regulations as outlined herein and therefore did not have the ability to accelerate the loan and proceed with the foreclosure process.

40. Plaintiffs contacted Defendant SPS several times to get information about their loss mitigation options and their loss mitigation review. Despite being assigned a single point of contact, Plaintiffs were always connected to different representatives who were

unfamiliar with their mortgage loan account and would provide vague and confusing information.

41. 12 CFR § 1024.40(a)(2) requires loan servicers to " Make available to a delinquent borrower, via telephone, personnel assigned to the borrower as described in paragraph (a)(1) of this section to respond to the borrower's inquiries, and as applicable, assist the borrower with available loss mitigation options until the borrower has made, without incurring a late charge, two consecutive mortgage payments in accordance with the terms of a permanent loss mitigation agreement.

42. Defendant SPS failed to make Plaintiffs' single point of contact available to Plaintiffs to respond to their inquiries and assist them with loss mitigation options.

43. Had Defendant SPS made Plaintiffs single point of contact available to them to assist them with their loss mitigation options, Plaintiffs' home would not be in foreclosure.

44. Defendant SPS's breach of the Deed of Trust contract has caused Plaintiffs damage by placing their home in foreclosure, foreclosure fees and costs added on to their account, significant legal fees, and the loss of approximately $164,000.00 in equity in the property.

**C. Defendant SPS and Defendant Substitute Trustee are in Breach of Contract for Selling Plaintiffs' Home for a Grossly Inadequate Price.**

Incorporating Previous Paragraphs:

45. The relationship between Plaintiffs and Defendant Substitute Trustee is rooted in a contract evidenced by the Deed of Trust. Defendant Substitute Trustee breached its fiduciary and contractual duty to the Plaintiffs by selling the property for a value so low that it "shocks the conscious."

46. Plaintiffs' principal balance on their mortgage is approximately $318,000.00. Their home was sold at a foreclosure sale for approximately $273,000.00. The estimated value of Plaintiff's home is $482,000.00.

47. When Plaintiffs' home was sold at the foreclosure auction, they had approximately $164,000.00 in equity in the property. The amount of equity in their property continues to accrue daily.

48. Defendant SPS knew about the substantial amount of equity in the property and still referred the home to foreclosure despite the fact that they were well protected due to the amount of equity in the property.

49. Defendant Substitute Trustee breached its fiduciary duty to Plaintiffs when they sold the property without considering the substantial amount of equity Plaintiffs had accumulated in the property.

50. *Crosby v. ALG Trustee, LLC,* 822 S.E.2d 185 (Va. 2018) established that the duty of impartiality is an implied term of the Deed of Trust. The Court found that the foreclosure sale at issue "…overwhelmingly benefited the creditor at the debtor's expense and there was a significant discrepancy between the sales price and the value of the property." Id. At 191. The Court went on to recognize that "So important is the requirement of impartiality that this Court has expressly recognized that a trustee's failure to remain impartial by selling the property at a price that is "so grossly inadequate as to shock the conscious" will "raise the presumption of fraud." Id. At 190. (quoting *Cromer v. De Jarnette*, 188 Va. 680, 686 (1949)).

51. Plaintiffs' home was sold in foreclosure at a price that was grossly inadequate and shocks the conscious.

52. These actions by Defendant SPS and Defendant Substitute Trustee resulted in Plaintiffs losing the equity they had accumulated in their home.

### IV.     Rescission of Sale

Incorporating Previous Paragraphs:

53. Upon information and belief, Defendant SPS and Defendant Substitute Trustee sold Plaintiffs' property at auction on December 31, 2019 at 10:00 a.m.

54. A rescission of the foreclosure sale would return Plaintiffs to the position they were in before the improperly held foreclosure sale was conducted by Defendants.

55. A rescission is a feasible, practicable, and an effective way to vindicate Plaintiffs.

56. A rescission is proper in this instance as the Property is special and unique requiring the specific performance of an equitable rescission.

57. Defendant Substitute Trustee knowingly and willfully foreclosed on Plaintiffs without completing their due diligence to verify the status of the debt owed.

58. Without a rescission, Plaintiffs will suffer serious and permanent harm to their financial condition. This hardship substantially outweighs Defendants' costs of rescinding the improperly held foreclosure sale.

## V.     Plaintiffs are Entitled to an Award of Attorney's Fees and Costs

Incorporating Previous Paragraphs:

59. In light of the forgoing, Plaintiffs request the Court award them reasonable attorney's fees and costs.  In Virginia, a Court can award attorney fees based on contract.  The Deed of Trust is a contract the Deed of Trust contains an applicable law provision.

60. One applicable law that is a contract provision is 12 U.S.C. § 2605(f)(3) which allows "…in the case of any successful action under this section, the costs of the action, together with attorney's fees incurred in connection with such action as the court may determine to be reasonable under the circumstances."

61. Defendants violated 12 U.S.C. § 2605(k)(1)(E) which states, "A servicer of a federally related mortgage shall not fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

62. Defendant SPS violated 12 CFR §1024.41 and 12 CFR §1024.40, obligations found by the Bureau of Consumer Financial Protection.  Due to Defendants violation, Plaintiffs incurred significant legal fees trying to remedy Defendant SPS's breach of contract.

WHEREFORE, your Plaintiffs pray that the Court ORDER Defendants and each of them, their servants, agents, employees or other parties acting on their behalf to RESCIND the foreclosure sale of the instant property and DECLARE that the foreclosure sale which occurred on December 31, 2019 be VOID and INVALID.

Further, Plaintiffs request compensatory damages against Defendant SPS and Defendant Substitute Trustee in the amount of FOUR HUNDRED EIGHTY-TWO THOUSAND DOLLARS AND NO CENTS ($482,000.00) along with attorney's fees, damages, costs, and any other remedy allowed by law.

Plaintiffs request a trial by jury.

                                        Respectfully Submitted,
                                        **Josh McMichael**
                                        **Penni McMichael**

                                        Of Counsel:

                                        By  /s/ Michelle A. Paul
                                                Counsel

       Michelle A. Paul VSB# 82508
       Heath J. Thompson VSB# 66748
       Counsel for Plaintiffs
       Heath J. Thompson, P.C.
       4224 Holland Road, Suite 108
       Virginia Beach, VA 23452
       757-480-0060 (office)
       757-257-0088 (facsimile)
       michelle@heaththompson.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 25th day of February 2020, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel:

Robert Oliveri
P.O. Box 839
Warrenton, Virginia 20188-0839
T: (703) 217-3379
F: (703) 840-4279
robert.oliveri@brockandscott.com
      *Counsel for Defendant Select Portfolio Servicing, Inc.*


William M. Savage
Shapiro & Brown, LLP
10021 Balls Ford Road
Suite 200
Manassas, VA 20109
T: (703) 449-5800
F: (703) 449-5850
bsavage@logs.com
      *Counsel for Defendant Professional Foreclosure Corporation of Virginia*


                                                By  /s/ Michelle A. Paul
                                                     Counsel

                                      Michelle A. Paul VSB# 82508
                                      Heath J. Thompson VSB# 66748
                                      Counsel for Plaintiffs
                                      Heath J. Thompson, P.C.
                                      4224 Holland Road, Suite 108
                                      Virginia Beach, VA 23452
                                      757-480-0060 (office)
                                      757-257-0088 (facsimile)
                                      michelle@heaththompson.com