CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
6/10/2020
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JOSH MCMICHAEL, *et al.*, <br>      *Plaintiffs*, <br><br> v. <br><br> SELECT PORTFOLIO SERVICING, INC., *et al.* <br>      *Defendants*. | NO. 6:20-cv-00004 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

Before the Court is Defendant Select Portfolio Servicing, Inc.'s ("SPS") motion to dismiss, Dkt. 17, which Defendant Professional Foreclosure Corporation of Virginia ("PFC") joins, Dkt. 22 at 1, as well as Defendant PFC's motion to dismiss, Dkt. 21, and Plaintiffs Josh and Penni McMichael's motion to remand, Dkt. 30.

Plaintiffs claim Defendants breached their deed of trust based on three different types of violations. Claims A and B are brought against only SPS for alleged violations of federal mortgage regulations, which Plaintiffs contend have been incorporated into their deed of trust. Claim C is brought against SPS and PFC for selling Plaintiffs' property for a grossly inadequate price at foreclosure. The Court concludes that it has subject matter jurisdiction over Claims A and B, pursuant to 28 U.S.C. § 1331, and it will deny Plaintiffs' motion to remand as to those two claims. The Court will grant Defendants' motion to dismiss Claims A and B for failure to state a claim on which relief can be granted.

Because the Court will dismiss the only claims over which it has original jurisdiction, it will decline to exercise supplemental jurisdiction over Claim C, which arises under state law. Instead, it will grant Plaintiffs' motion to remand as to that claim, remanding Claim C to the state

court for any further proceedings. Accordingly, Defendant PFC's motion to dismiss, Dkt. 21, which sought dismissal of only Claim C, will be dismissed as moot.

## I.  ALLEGED FACTUAL BACKGROUND

Plaintiffs Josh and Penni McMichael allege entering into a mortgage loan contract on February 14, 2007, as borrowers, secured by their property in Rockbridge County, Virginia. Dkt. 16 at ¶¶ 4–5. The Deed of Trust states that Taylor, Bean & Whitaker Mortgage Corp., who is not a party to this suit, acted as the lender. Dkt. 18-2 at 1. The Deed of Trust names J. Steven Grist, who is also not a party to this suit, as the trustee. *Id.* The factual allegations in the complaint identify PFC as the substitute trustee. Dkt. 16 at ¶ 3. Neither the factual allegations in the complaint, nor the Deed of Trust itself, identify SPS's specific role during the relevant time period or their obligations under the Deed of Trust.

In early 2019, Plaintiffs began to experience financial hardship after Penni McMichael lost her job and Josh McMichael experienced a reduction in income. Dkt. 16 at ¶ 9. While Plaintiffs continued to make payments for some time after their hardship began, they eventually fell behind on their mortgage payments. *Id.* at 10. Plaintiffs submitted a loan modification request in the fall of 2019, *id.* at ¶ 11, but it was denied on October 23, 2019.[1] Plaintiffs allege that they appealed the denial of their loan modification request within the appeal period that SPS provided.

Plaintiffs further claim that, despite the ongoing review of their loss mitigation request, SPS in late November 2019 scheduled a foreclosure sale of Plaintiffs' property on December 31, 2019. *Id.* at ¶ 13. Plaintiffs represent that SPS claimed that their loan modification appeal was

---

[1] In their memorandum in opposition to the motion to dismiss, Plaintiffs also identify that they were granted a loan modification package in 2018, Dkt. 28 at 5, but this document was not referenced in the complaint, nor was it attached as an exhibit to it.

denied on December 17, 2019. *Id.* at ¶ 14. SPS engaged in "dual tracking" the loan, Plaintiffs contend, because it continued to review its loss mitigation options while the appeal of Plaintiffs' loan modification request was pending while "actively proceeding with a foreclosure auction." *Id.* at ¶ 15. Plaintiffs also claim that while they were assigned a single point of contact to assist them with loss mitigation options, *id.* at ¶ 16, they were transferred to "representatives who were unfamiliar with their mortgage loan account" each they attempted to contact that single point of contact, *id.* at ¶ 17.

As Plaintiffs represent, SPS and PFC sold Plaintiffs' property at auction December 31, 2019 at 10:00 a.m., *id.* at ¶ 18, for $273,000. The complaint does not identify the buyer. At the time of sale, Plaintiffs claim that their home was estimated to be worth $482,000 and they had approximately $164,000 in equity in the property with a principal balance on their mortgage of approximately $318,000, *id.* at ¶¶ 46–47.

## II. ANALYSIS

The Court will first address whether it has subject matter jurisdiction to hear this case. Determining that it does, the Court will then address the merits of Defendant's motion to dismiss. Because the Deed of Trust does not incorporate 12 U.S.C. §§ 1024.41 and 1024.40, the alleged violations of which Plaintiffs argue form the basis of Defendant SPS's breach of that instrument, the Court will dismiss Claims A and B for failure to state a claim. Because the Court will dismiss all claims over which it has original jurisdiction, it will decline to exercise supplemental jurisdiction over Plaintiffs' last remaining claim, Claim C, which the parties agree arises under state law. The Court will remand Claim C to the state court for any further proceedings. The Court need not address Plaintiffs' requests for rescission of the foreclosure sale or for attorneys' fees,

because they are remedies for the alleged harm suffered in Claims A through C, not independent claims for relief.

### A. Motion to Remand

1. <u>Standard of Review</u>

Federal district courts possess only the jurisdiction created by the U.S. Constitution and authorized by Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Generally, state court defendants may remove a case to federal district court if the state court action could have been originally filed there. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court").

"Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Consequently, all doubts about the propriety of removal are resolved in favor of retaining state court jurisdiction. *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 181 (4th Cir. 2014); *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993). The removing party bears the burden of showing removal was proper. *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005).

2. <u>Analysis</u>

"Subject matter jurisdiction defines a court's power to adjudicate cases or controversies— its adjudicatory authority—and without it, a court can only decide that it does not have jurisdiction." *United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012). Defendants assert that

this Court possesses subject-matter jurisdiction over this action by virtue of 28 U.S.C. § 1331, which grants federal courts jurisdiction over actions "arising under" federal law. *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019). Courts evaluate assertions of "arising under" jurisdiction using the "well-pleaded complaint rule," "which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This means that affirmative defenses, counter arguments, or federal questions that may (or even must) arise later in the case do not count. While this rule "makes the plaintiff the master of the claim [and] he or she may avoid federal jurisdiction by exclusive reliance on state law," *Caterpillar Inc.*, 482 U.S. at 392, "a plaintiff's characterization of a claim as based solely on state law is not dispositive of whether federal question jurisdiction exists," *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). Because the court's subject matter jurisdiction under 28 U.S.C. § 1331 has been clearly invoked in Plaintiffs' complaint, the Court will deny Plaintiffs' motion to remand.

"[T]he vast majority" of cases arising under federal law "are those in which federal law creates the cause of action." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). However, an alternative category of cases may also be said to arise under federal law even when a plaintiff sues purely under state causes of action, *Gunn v. Minton*, 568 U.S. 251, 258 (2013), but only where "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc.*, 478 U.S. at 808 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)). This category of cases "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience,

solicitude, and hope of uniformity that a federal forum offers on federal issues," *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

Under this branch of "arising under" jurisprudence, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *see Pressl v. Appalachian Power Co.*, 842 F.3d 299, 303 (4th Cir. 2016). As it is Defendants' burden to establish the propriety of removal, it is likewise Defendants' burden to establish that the four factors outlined in *Gunn* are satisfied. *See Burrell*, 918 F.3d at 381 (finding no jurisdiction because the defendants failed to establish *Gunn*'s third and fourth prongs). In examining whether the Court has jurisdiction over the case, the Court "looks only to the 'plaintiff's statement of [their] own claim,' as set forth in the complaint." *Dupree v. Fay Servicing, LLC*, 392 F. Supp. 3d 639, 644 (E.D. Va. 2019) (quoting *Flying Pigs, LLC*, 757 F.3d at 181). Defendants here have clearly satisfied their burden. Moreover, Plaintiffs' counsel acknowledged during this Court's hearing on the motion to remand that she was not aware of any federal court that had remanded any claim similar to Claims A and B in this case for lack of subject matter jurisdiction.

Claim A (Breach of Deed of Trust for Violation of 12 C.F.R. § 1024.41 of the Real Estate Settlement Procedures Act) and Claim B (Breach of Deed of Trust for Violation of § 1024.40 of the Real Estate Settlement Procedures Act) of Plaintiffs' complaint meet the test set forth in *Gunn* and *Grable*. While Plaintiffs cast Claims A and B as breach of contract claims arising under Virginia law—specifically and repeatedly disclaiming any reliance on a private cause of action provided in any federal law—their well-pleaded complaint expressly depends on their assertion that the Defendants violated federal mortgage violations, meeting the first of the *Gunn* factors.

6

Given the complexity of the federal scheme regulating mortgages and foreclosure, the federal questions posed by Plaintiffs' complaint can also be said to be "substantial," *see Dupree*, 392 F. Supp. 3d at 644, and their resolution in this context by a federal court would not pose any serious federalism concerns, *cf. Lynchburg Range & Training v. Northam*, No. 6:20-cv-00020, 2020 WL 1950454, at *6 (W.D. Va. April 22, 2020) (finding federalism concerns where a federal court was asked to interpret whether a state governor's executive order infringed upon the scope of a state constitutional provision protecting the right to bear arms). And, lastly, whether these federal mortgage regulations were actually violated—the question at the heart of Plaintiffs' claims—is one that is actually disputed by the parties.

Accordingly, the Court concludes that Claims A and B of Plaintiffs' complaint properly invoke the Court's federal question jurisdiction under § 1331. *See Dupree*, 392 F. Supp. 3d at 644 (denying motion to remand plaintiff's breach of deed of trust claims because such claims were facially based on the violation of federal mortgage regulations that plaintiff argued were incorporated into the deed). Because the Court will dismiss Claims A and B pursuant to Defendants' Rule 12(b)(6) motion, the Court declines to exercise supplemental jurisdiction over the remaining state law claim, pursuant to 28 U.S.C. § 1367, for breach of contract for selling Plaintiffs' home for a price that "shocks the conscience" (Claim C). *See Burch v. N.C. Dep't of Public Safety*, 158 F. Supp. 3d 449, 465 (E.D.N.C. 2016) (declining to exercise supplemental jurisdiction over a state law claim after dismissing all other claims over which the court had original jurisdiction). The Court will deny Plaintiffs' motion for remand in part as to Claims A and B, but it will grant the motion in part as to Claim C.

### B. Motion to Dismiss

1. <u>Standard of Review</u>

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Still, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

2. <u>Analysis – Claims A and B</u>

Plaintiffs contend that Defendant SPS breached the Deed of Trust by allegedly violating 12 C.F.R. § 1024.41 and § 1024.40, pursuant to Claims A and B, respectively. Under Plaintiffs' theory, the Deed of Trust incorporated all relevant federal law, including RESPA, Regulation X,

8

and any amendments or successor regulations or legislation that were enacted after the Deed of Trust had been signed. Plaintiffs do not cite to any private cause of action in RESPA or any of its regulations in forming their claims against SPS. In fact, they specifically and repeatedly disclaimed any reliance on any private cause of action in bringing their claims, despite acknowledging that such a private cause of action existed to enforce 12 C.F.R. § 1024.41. Rather, Plaintiffs argue that Defendants could not violate that body of law without also breaching the Deed of Trust. In other words, Plaintiffs argue that the parties were required to follow 12 C.F.R. § 1024.41 and 12 C.F.R. § 1024.40, along with all other "relevant" federal law and Virginia law, as conditions of the Deed of Trust—any failure to follow that body of law, regardless of whether there exists a private cause of action for the claim, would purportedly constitute a breach of the Deed of Trust. Plaintiffs do not cite any cases in their briefs that directly support such a broad theory, nor could they point to any at this Court's hearing on the motion to dismiss—and with good reason.

Plaintiffs point to the deed of trust's "governing law" provision as evidence that the Deed of Trust incorporated federal law, including RESPA. The provision reads in part:

> This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

Dkt. 18-3 at 2.[2] Plaintiffs argue that this provision "clearly incorporates" all applicable law into the Deed of Trust, including all federal law.[3] As proof that any amendments to RESPA or the regulations implementing it that are enacted after the Deed of Trust had been signed by the parties are also incorporated, Plaintiffs cite the Deed of Trust's definition of RESPA:

> the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument 'RESPA' refers to all requirements and restrictions that are imposed in regard to a 'federally related mortgage loan' even if the Loan does not qualify as a 'federally related mortgage loan' under RESPA.

Dkt. 18-2 at 4.

SPS argues, on the other hand, that 12 C.F.R. §§ 1024.40 and 1024.41 were not specifically incorporated into the Deed of Trust because these regulations became effective several years after the Deed of Trust had been signed by the parties. SPS concedes that a contract may incorporate future regulations as conditions of performance. It argues, however, that such incorporation must be sufficiently specific in order to be effective, and SPS further contends that the necessary level of specificity is not present in the Deed of Trust at issue. In particular, they point to how compliance with 12 C.F.R. §§ 1024.40 and 1024.41, or even RESPA generally, were not expressly made conditions precedent to foreclosure. In fact, they claim that the Deed of Trust does not specifically reference 12 C.F.R. §§ 1024.40 and 1024.41 at all. Given that these two regulations

---

[2] A court may consider a document outside the complaint when evaluating a motion to dismiss if the document is authentic and integral to the complaint. *Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016). As the Deed of Trust allegedly forms the basis of a contract between the parties to this claim, and the parties do not dispute its authenticity, the Court may consider the document, which was attached to Defendants' memorandum in support of its motion to dismiss. The parties do not dispute that this document may be considered by the Court.

[3] The Deed of Trust defines "Applicable Law" as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Dkt. 18-2 at 3.

had not yet been promulgated at the time of signing, this is understandable. However, the Deed of Trust's failure to specifically incorporate RESPA or its regulations into any specific provisions governing the foreclosure process is fatal to Plaintiffs' claims—this would be true regardless of whether the cited regulations were promulgated before or after the signing of the deed of trust.

"A deed of trust is construed as a contract under Virginia law," and "[i]t is construed as written, without adding terms that were not included by the parties." *Mathews v. PHH Mortg. Corp.*, 724 S.E.2d 196, 200–01 (Va. 2012). Thus, whether the Deed of Trust incorporates 12 C.F.R. §§ 1024.40 and 1024.41 in its terms is a matter of contract interpretation and thus a question of law. *See Homeland Training Ctr. LLC v. Summit Point Auto. Research Ctr.*, 594 F.3d 285, 290 (4th Cir. 2010).

"Most courts construe narrowly the phrase 'all applicable law' (or similar language) in a contract." *Condel v. Bank of America, N.A*., No. 3:12-cv-212, 2012 WL 2673167, at *8 (E.D. Va. 2012). This Court finds persuasive the Eastern District of Virginia's holding that "incorporation of a federal regulation into a Deed of Trust [under Virginia law] requires that (1) the provision in the Deed of Trust purportedly incorporating the federal regulation is specific enough to make clear that the parties intended to incorporate the regulation, and (2) the federal regulation was in effect at the time the Deed of Trust was executed." *Dupree*, 392 F. Supp. 3d at 644 (collecting other cases in that district which held the same). Even assuming that the Deed of Trust's definition of RESPA captures § 1024.40 and § 1024.40 as regulations promulgated after the deed's signing, as Plaintiffs claim, the Court concludes that there is nothing in the Deed of Trust that specifically incorporates these regulations into the Deed of Trust—let alone into any of the provisions governing the foreclosure process.

The Supreme Court of Virginia's opinion in *Mathews v. PHH Mortgage Corp.* provides substantial guidance on the issue before this Court. In *Mathews*, the Court addressed whether the following paragraph properly incorporated HUD regulations relating to acceleration or foreclosure. The contractual provision in that case read as follows:

> (d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit [the l]ender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by the regulations of the Secretary.

*Mathews*, 724 S.E.2d at 201 (alterations in original) (emphasis omitted). The provision was included as part of a paragraph in the Deed of Trust governing default. The Court held that although the Deed of Trust did not reference any specific HUD regulations, the language of the deed unambiguously expressed the intent of the parties to prevent the lender from accelerating or foreclosing without doing so in accordance with any relevant HUD regulations. *Id.* at 203.

In comparison, Plaintiffs cite no more than a governing law provision and the provisions defining the Deed of Trust's use of the term "applicable law" and "RESPA" for their claim that the Deed of Trust incorporated this body of law into the instrument as conditions of performance. Such provisions do not clearly delineate what if any rights would accrue to the parties to the deed and differ significantly from the provision in *Mathews*, which clearly identified a specific area of law to provide rights and limitation to the parties in a specific area of the deed: acceleration and foreclosure in the event of default. To accept Plaintiffs' argument would be to accept that the Deed of Trust incorporated a vast swath of both federal law and Virginia law into the document. Instead, this provision merely identifies the law that is to govern the agreement. *See Buford v. Ocwen Loan Servicing, Inc., LLC*, No. 2:18-cv-154, 2018 WL 6790656, at *7 (E.D. Va. Nov. 2, 2018) (Report & Recommendation) (holding that a deed of trust in Virginia containing the exact same governing law provision and exact same provision defining RESPA did not incorporate

§ 1024.41 because the reference to applicable law was too generalized to incorporate that regulation or any other part of RESPA or Regulation X), *adopted by* 2018 WL 6617646*; Jennings v. RoundPoint Mortgage Corp.*, No. 2:17-cv-247, 2018 WL 1065107, at *3 (E.D. Va. Feb. 27, 2018) (holding that a deed of trust in Virginia containing the exact same governing law provision did not incorporate the federal regulations governing the foreclosure process); *see also Lubitz v. Wells Fargo Bank, N.A.*, 85 Va. Cir. 379, 2012 WL 9737639, at *1 (Va. Cir. Ct. 2012) (holding that a deed of trust's reference to "applicable law" was insufficiently specific to incorporate such law into the contract when based on the example set forth in *Mathews*).

The same can be said of the Deed of Trust's provision defining RESPA. Not only does that provision merely define the term "RESPA" as it is used in the Deed of Trust, Plaintiffs have pointed to no provision governing the foreclosure process that specifically indicates that the process would be governed by RESPA. This is in contrast to the many places in the Deed of Trust that do specifically incorporate RESPA and Regulation X. *See, e.g.,* Dkt. 18-2 at 6 (stating that "[i]f there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA"). To read in a requirement that RESPA, as it is defined in the Deed of Trust, sets forth any limitations or requirements on the parties during the foreclosure process would amount to no less than adding terms to the contract that the parties did not bargain for. *See Buford*, 2018 WL 6790656, at *7. The Court declines such an invitation.

The Deed of Trust does not include sufficiently specific language to incorporate 12 U.S.C. §§ 1024.41 and 1024.40. Accordingly, any conduct that might be violative of those regulations is

13

not actionable as a breach of contract claim. Therefore, the Court will dismiss Claims A and B of Plaintiffs' complaint. The Court declines to exercise supplemental jurisdiction over Plaintiffs' last remaining claim (Claim C)—which, as a claim for breach of contract by selling Plaintiffs' property at a grossly inadequate price at foreclosure, arises under state law—because the Court has dismissed all other claims over which it has original jurisdiction. As such, it will remand Claim C of Plaintiffs' complaint to the state court for any further proceedings.

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Plaintiffs' motion to remand, Dkt. 30, remanding only Claim C to the state court for any further proceedings. As such, the Court will dismiss as moot Defendant PFC's motion to dismiss, Dkt. 21, which sought dismissal of Claim C for failure to state a claim.

The Court will grant in part Defendant SPS's motion to dismiss, Dkt. 17, by dismissing with prejudice Plaintiffs' breach of contract claims under Claims A and B. Because it will remand Claim C to the state court, it will deny as moot Defendant SPS's motion to dismiss to the extent it seeks dismissal of Claim C. As no further claims in this case remain before the Court, the Court will not consider Plaintiffs' requests for rescission of the foreclosure sale or attorneys' fees. An appropriate Order will issue.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered this day of __10th__ June 2020.

*/s/ Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

14